[No. B112263. Second Dist., Div. Three. Jan. 14, 1999.]

INTERNATIONAL LONGSHOREMEN'S AND WAREHOUSEMEN'S
UNION et al., Plaintiffs and Respondents, v.
LOS ANGELES EXPORT TERMINAL, INC., Defendant and Appellant.

## COUNSEL

Jones, Day, Reavis & Pogue, Gerald W. Palmer, Erich R. Luschei and Erin
E. Nolan for Defendant and Appellant.

Leonard, Carder, Nathan, Zuckerman, Ross, Chin & Remar, Robert Remar, Beth A. Ross and Arthur A. Krantz for Plaintiffs and Respondents.

## OPINION

**KLEIN, P. J.**—Defendant and appellant Los Angeles Export Terminal, Inc. (LAXT) appeals a judgment and postjudgment order in favor of plaintiffs and respondents International Longshoremen's and Warehousemen's Union (ILWU), three of its affiliated locals, ILWU Local 13, ILWU Local 63 and ILWU Local 94, and three individuals, James Spinosa, John Vlaic and Mike Freese, each of whom is an officer or agent of one of the local affiliates (collectively, ILWU).

The essential issue presented is whether LAXT's board of directors is subject to the open meeting requirements of the Ralph M. Brown Act (the Brown Act or the Act) (Gov. Code, § 54950 et seq.).[1]

For the reasons discussed below, we conclude LAXT, a private corporation in which the Harbor Department of the City of Los Angeles (the Harbor Department) is a shareholder, is subject to the Brown Act. The judgment and postjudgment order are affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1981, the Board of Harbor Commissioners, which is entrusted by sections 138 and 139 of the Los Angeles City Charter (City Charter) with power and authority over the Harbor Department and the Port of Los Angeles, adopted Resolution No. 4531. Said resolution approved in concept the development of a major coal terminal on Terminal Island and set forth a series of steps to expedite related environmental studies and review. The port commissioned a feasibility study which was to determine the viability of the project.

Thereafter, 28 private companies based in Japan, 6 domestic companies and the Harbor Department negotiated and reached agreement on a complex contractual arrangement known as the shareholders' agreement. Under the agreement, LAXT would be formed as a private, for profit corporation to design, construct and operate a dry bulk handling facility for the export of coal on land leased from the Harbor Department. LAXT was to be capitalized with $120 million. The Harbor Department, as a 15 percent shareholder,

---

[1]All further statutory references are to the Government Code, unless otherwise indicated.

would contribute $18 million and would be entitled to nominate three of the nineteen LAXT board members.

Pursuant to a charter provision requiring the Los Angeles City Council (City Council) to approve contracts with a payment commitment extending beyond three years, the shareholders' agreement was submitted to the City Council for its consideration.

On February 23, 1993, the City Council adopted Ordinance No. 168614, stating: "The Shareholders' Agreement is hereby approved and the Mayor of Los Angeles, or the President of the Board of Harbor Commissioners or the Executive Director of the Harbor Department is hereby authorized to execute said agreement."

On March 31, 1993, articles of incorporation were filed with the Secretary of State by a Los Angeles deputy city attorney.

The corporate entities and the Harbor Department entered into the shareholders' agreement on April 12, 1993.

The shareholders' agreement contained, inter alia, a condition that the project would not go forward unless the parties unanimously approved the terms of the lease between LAXT and the Harbor Department. The Board of Harbor Commissioners approved the lease on June 14, 1993.

The lease specified a term of 35 years, including a 10-year option. Under the City Charter, leases having a duration exceeding five years require City Council approval. Because of the lease's duration, it was submitted to the City Council, which approved it on July 27, 1993.

The lease then was executed by LAXT and "THE CITY OF LOS ANGELES, by its Board of Harbor Commissioners," effective August 30, 1993.

LAXT's organization, shareholder funding, election of directors, project design and construction then proceeded. On November 16, 1995, LAXT's board of directors authorized LAXT to enter into a terminal operating agreement with Pacific Carbon Services Corporation (PCS).

1. *Proceedings.*

Following LAXT's approval of the terminal operating agreement with PCS, ILWU initiated this action on March 4, 1996, by filing a petition for writ of mandate which sought to nullify said agreement as well as injunctive

relief. ILWU alleged PCS was a "non-union" or "anti-union" employer which would employ workers at LAXT and its facilities "at substandard wages and under substandard terms and conditions of employment that will severely harm the prevailing standards in the Port of Los Angeles." ILWU alleged LAXT's board of directors was a legislative body within the meaning of the Brown Act and therefore was required to conduct its meetings publicly.

ILWU sought an injunction requiring LAXT's board of directors to conduct its future affairs in accordance with the Brown Act, and a judicial determination that the PCS agreement was null and void because LAXT's board of directors had approved the PCS agreement without complying with the procedural requirements of the Brown Act calling for open public meetings. ILWU also sought an award of attorney fees pursuant to section 54960.5 of the Act.

### 2. Trial court's ruling.

The matter was tried on briefs, declarations and exhibits. After hearing arguments by counsel, the trial court ruled LAXT's board of directors is a "legislative body" subject to the Brown Act.

The statement of decision provides in relevant part: The construction and operation of the port facility herein would be a pure governmental function, but for the city's arrangement with LAXT. The construction and operation of a port facility is a properly and lawfully delegable activity of the city in that such activity constitutes the performance of administrative functions. (*County of Los Angeles* v. *Nesvig* (1965) 231 Cal.App.2d 603, 616 [41 Cal.Rptr. 918].) The city's actions in forming LAXT "amount to the creation of LAXT by the City's elected legislative body, the Los Angeles City Council." LAXT is a private entity created by the elected legislative body of a local agency in order to exercise authority that may lawfully be delegated by the elected governing body to a private corporation or entity, within the meaning of section 54952, subdivision (c)(1). Therefore, the Brown Act applies to the LAXT board of directors. On February 2, 1996, ILWU made a proper demand that LAXT comply with the Brown Act. "All actions taken by the LAXT [b]oard of [d]irectors within the 90 days preceding [ILWU's] demand, November 4, 1995 through February 2, 1996, are null and void . . . ." (See § 54960.1, subd. (a).)

Judgment was entered on March 7, 1997.

### 3. Postjudgment proceedings.

On April 25, 1997, the trial court denied LAXT's motion to vacate the judgment and enter a judgment of dismissal, as well as LAXT's motion for

a new trial. In addition, pursuant to section 54960.5, the trial court awarded attorney fees to ILWU, as the prevailing party, in the sum of $60,660.

This appeal followed.

## CONTENTIONS

LAXT contends the trial court erred: in determining the LAXT board of directors is a legislative body subject to the Brown Act; in denying LAXT's posttrial motions to vacate the judgment and for a new trial; in awarding attorney fees to ILWU and in the amount awarded.

## DISCUSSION

### 1. *Standard of review.*

The central issue is the applicability of the Brown Act, specifically, whether LAXT's board of directors is a legislative body within the meaning of section 54952, subdivision (c)(1)(A), so as to be subject to the Act. As an appellate court, ". . . we 'conduct independent review of the trial court's determination of questions of law.' [Citation.] Interpretation of a statute is a question of law. [Citations.] Further, application of the interpreted statute to undisputed facts is also subject to our independent determination. [Citation.]" (*Harbor Fumigation, Inc.* v. *County of San Diego Air Pollution Control Dist.* (1996) 43 Cal.App.4th 854, 859 [50 Cal.Rptr.2d 874].)

### 2. *The Brown Act's purpose, scope and broad construction.*

The Brown Act (§ 54950 et seq.), adopted in 1953, is intended to ensure the public's right to attend the meetings of public agencies. (*Freedom Newspapers, Inc.* v. *Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 825 [25 Cal.Rptr.2d 148, 863 P.2d 218].) To achieve this aim, the Act requires, inter alia, that an agenda be posted at least 72 hours before a regular meeting and forbids action on any item not on that agenda. (§ 54954.2, subd. (a); *Cohan* v. *City of Thousand Oaks* (1994) 30 Cal.App.4th 547, 555 [35 Cal.Rptr.2d 782].) The Act thus serves to facilitate public participation in all phases of local government decisionmaking and to curb misuse of the democratic process by secret legislation of public bodies. (*Cohan, supra,* 30 Cal.App.4th at p. 555.)

The Act's statement of intent provides: "In enacting this chapter, the Legislature finds and declares that the public commissions, boards and

councils and the other public agencies in this State exist to aid in the conduct of the people's business. It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly. [¶] The people of this State do not yield their sovereignty to the agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created." (§ 54950; Stats. 1953, ch. 1588, § 1, p. 3270.)

The Brown Act dictates that "[a]ll meetings of the legislative body of a local agency shall be open and public, and all persons shall be permitted to attend any meeting of the legislative body of a local agency, except as otherwise provided in this chapter." (§ 54953, subd. (a).)

The term "legislative body" has numerous definitions, grouped together in section 54952. The question before us de novo is whether LAXT's board of directors is a legislative body within the meaning of subdivision (c)(1)(A) of section 54952. This provision states in relevant part: "As used in this chapter, 'legislative body' means: [¶] . . . [¶] (c)(1) A board, commission, committee, or other multimember body that governs a private corporation or entity that . . . : [¶] (A) Is created by the elected legislative body in order to exercise authority that may lawfully be delegated by the elected governing body to a private corporation or entity." (§ 54952, subd. (c)(1)(A).)

In determining whether LAXT's board of directors is a legislative body within the meaning of the Brown Act, we are mindful that as a remedial statute, the Brown Act should be construed liberally in favor of openness so as to accomplish its purpose and suppress the mischief at which it is directed. (*San Diego Union* v. *City Council* (1983) 146 Cal.App.3d 947, 955 [196 Cal.Rptr. 45] [construing open-meeting requirements].) This is consistent with the rule that "civil statutes for the protection of the public are, generally, broadly construed in favor of that protective purpose. [Citations.]" (*People* ex rel. *Lungren* v. *Superior Court* (1996) 14 Cal.4th 294, 313 [58 Cal.Rptr.2d 855, 926 P.2d 1042].)

3. *LAXT's board of directors is a legislative body within the meaning of the Brown Act.*

As indicated, section 54952, subdivision (c)(1)(A), defines a legislative body as "A board, commission, committee, or other multimember body that governs a private corporation or entity that . . . : [¶] (A) Is created by the elected legislative body in order to exercise authority that may lawfully be delegated by the elected governing body to a private corporation or entity."

■ There is no question that LAXT's board of directors is a multimember body that governs a private corporation or entity. The dispute concerns the remaining elements of section 54952, subdivision (c)(1)(A). LAXT contends the trial court erred in concluding LAXT's board of directors is a legislative body within the meaning of the statute because: (1) LAXT was not created by an *elected legislative body*, the City Council, but rather, by an appointed body, the Board of Harbor Commissioners; (2) LAXT was not created to exercise any governmental authority; and (3) LAXT was not granted any authority which could be delegated by the City Council. The arguments are unpersuasive.

a. *LAXT was created by an elected legislative body, namely, the City Council.*

To be subject to the Brown Act, the private corporation must be "created by the elected legislative body." (§ 54952, subd. (c)(1)(A).)

The City Charter vests the harbor commission, an *appointed* body, with power and authority over the operation and development of the Port of Los Angeles. (City Charter, §§ 138, 139.) LAXT asserts it was the harbor commission, not the City Council, which created LAXT, and the acts of the harbor commission in creating LAXT cannot be attributed to the City Council without disregarding the explicit allocations of power under the charter.

Section 54952, subdivision (c)(1)(A), does not define what is meant by the term "created by." The ordinary definition of "to create" is "to bring into existence." (Webster's New Internat. Dict. (3d ed. 1986) p. 532.) Here, the City Council, as well as the harbor commission, played a role in bringing LAXT into existence.

Specifically, on February 23, 1993, the City Council adopted Ordinance No. 168614, stating: "The Shareholders' Agreement is hereby approved and the Mayor of Los Angeles, or the President of the Board of Harbor Commissioners or the Executive Director of the Harbor Department is hereby authorized to execute said agreement."[2]

Following this formal action by the City Council, on March 31, 1993, articles of incorporation were filed by a deputy city attorney with the

---

[2]Although LAXT contends it was created by the collective action of all of its shareholders rather than by any governmental entity, absent this approval by the City Council authorizing the Harbor Department to enter into the shareholders' agreement, LAXT could not have been created.

Secretary of State, and the corporate entities and the Harbor Department entered into the shareholders' agreement on April 12, 1993.

Thus, the City Council was involved in bringing LAXT into existence. The contention LAXT was entirely a creature of the Board of Harbor Commissioners is without merit.

Of particular significance is a provision of the City Charter expressly authorizing the City Council to review any matter originally considered by the Board of Harbor Commissioners, effectively usurping the commission's role. Section 32.3 of the City Charter provides in relevant part: "Notwithstanding any other provisions of this City Charter, actions of commissions and boards shall become final at the expiration of the next five (5) meeting days of the City Council during which the Council has convened in regular session, unless City Council acts within that time by two-thirds vote to bring such commission or board action before it for consideration and for whatever action, if any, it deems appropriate, . . . If the Council asserts such jurisdiction, said commission or board will immediately transmit such action to the City Clerk for review by the Council and the particular action of the board or commission shall not be deemed final and approved. . . . *If the Council asserts such jurisdiction over the action, it shall have the same authority to act on the matter as that originally held by the board or commission*, but it must then act and make a final decision on the matter before the expiration of the next twenty-one (21) calendar days from voting to bring the matter before it, or the action of the commission or board shall become final." (Italics added.)

Thus, the City Council, an elected legislative body with ultimate accountability to the voters, retains plenary decisionmaking authority over Harbor Department affairs and has jurisdiction to overturn any decision of the appointed Board of Harbor Commissioners. Here, by adopting an ordinance which approved the shareholders' agreement to form LAXT, as well as by acquiescing in the Board of Harbor Commissioners' activity in establishing LAXT, the City Council was involved in bringing LAXT into existence. Without the express or implied approval of the City Council, LAXT could not have been created. Accordingly, LAXT was created by an elected legislative body within the meaning of the statute, and the trial court properly so found.

Nonetheless, in an attempt to characterize LAXT as entirely a creature of the Board of Harbor Commissioners, LAXT emphasizes the shareholders' agreement was submitted to the City Council for its approval *only because*

section 390 of the City Charter required that contracts with a payment commitment extending for a period longer than three years be approved and authorized by ordinance of the City of Los Angeles. LAXT also stresses the 35-year lease between LAXT and the Harbor Department was submitted to the City Council for its approval *only because* section 140(e) of the City Charter required City Council approval for leases having a duration exceeding 5 years. These arguments are unpersuasive. Irrespective of the length of the payment commitment or the duration of the lease, the city's elected legislative body, namely, the City Council, inherently was involved in the creation of LAXT. Even assuming the payment commitment would have extended for less than three years, or the lease extended for less than five years, the City Council would have been involved in LAXT's creation.

As explained, under section 32.3 of the City Charter the City Council is vested with the power to assert jurisdiction over any matter before the Board of Harbor Commissioners and the council then has the same authority to act on the matter as was originally held by that board. Obviously, if the City Council is in agreement with the action taken by the Board of Harbor Commissioners, there is no need for the City Council to usurp that board's role. In such a situation, the City Council, with full knowledge of the harbor commissioners' action and with the power to disaffirm the action, simply can acquiesce and thereby ratify the action taken by the Board of Harbor Commissioners. It is only when the City Council disagrees with the action taken by the Board of Harbor Commissioners that there is a need for the City Council to intervene.

Therefore, LAXT's attempt to depict itself as purely a creature of the appointed Board of Harbor Commissioners is unavailing. Irrespective of the level of the City Council's active involvement in the creation of LAXT, in view of the City Council's ultimate authority to overturn an action of the harbor commission, the trial court properly found LAXT was created by the city's *elected legislative body.* (§ 54952, subd. (c)(1)(A).)

 b. *LAXT was created to exercise governmental authority.*

Section 54952, subdivision (c)(1)(A) requires the private entity be created by the elected legislative body "in order to exercise authority" which may be delegated. LAXT contends it was not created to exercise any governmental authority. The argument is not persuasive.

By way of background, a public body may delegate the performance of administrative functions to a private entity if it retains ultimate control over

administration so that it may safeguard the public interest. (*County of Los Angeles* v. *Nesvig, supra,* 231 Cal.App.2d at p. 616.) Case law delineates the permissible scope of delegation of governmental authority. For example, *Irwin* v. *City of Manhattan Beach* (1966) 65 Cal.2d 13, 23 [51 Cal.Rptr. 881, 415 P.2d 769], upheld a city's grant of authority to private parties to build and operate an overpass as a lawful delegation. *County of Los Angeles* v. *Nesvig, supra,* 231 Cal.App.2d at page 617, upheld the County of Los Angeles's contract with a private company to operate the music center as a lawful delegation of governmental authority. *Haggerty* v. *City of Oakland* (1958) 161 Cal.App.2d 407, 415-417 [326 P.2d 957, 66 A.L.R.2d 718], upheld the Oakland Board of Port Commissioners' lease of a port facility to a private company as a lawful delegation. In contrast, *Egan* v. *San Francisco* (1913) 165 Cal. 576, 583-584 [133 P. 294], invalidated a contract between San Francisco and a private corporation formed to build an opera house on public land, where the city had not retained sufficient control over operation of the opera house for the delegation to be valid.[3]

Here, Tay Yoshitani, who served as LAXT's president and as an LAXT director representing the Harbor Department, acknowledged in a letter to a taxpayers' organization: "*All major facilities at the Port of Los Angeles are totally built and paid for by the port and subsequently leased to a tenant with the exception of LAXT.* In other words, the port typically assumes 'all of the risk' of building a major marine facility. In the case of LAXT, the port structured the project so that other parties besides the City [of Los Angeles] assumed the bulk of the risk." (Italics added.)

Thus, LAXT's own president recognized the Board of Harbor Commissioners had delegated to LAXT its own authority to construct and operate a port facility. This is consistent with section 37386, which provides: "A city may lease such tide and submerged lands and uplands for: [¶] (a) Industrial uses. [¶] (b) Improvement and development of city harbors. [¶] (c) Construction and maintenance of wharves, docks, piers, or bulkhead piers. [¶] (d) *Other public uses* consistent with the requirements of commerce or navigation in city harbors." (Italics added; see also § 37385; Civ. Code, § 718.) Here, the City created LAXT to develop a coal facility on land leased from the Harbor Department, instead of developing the facility directly.

Accordingly, LAXT's contention it was not created to exercise any governmental authority must be rejected.

---

[3]There is no contention here there was an excessive delegation of public authority to LAXT.

### c. *The delegation to LAXT was effected by the City Council.*

To be subject to the Brown Act, the private corporation must be created to exercise governmental authority "that may lawfully be delegated by the elected governing body to a private corporation or entity." (§ 54952, subd. (c)(1)(A).) LAXT asserts the authority which was delegated to it was delegated by the Board of Harbor Commissioners, not by the City Council. LAXT contends only the Board of Harbor Commissioners had the authority to delegate the authority at issue herein, i.e., to construct and operate a port facility.

The contention fails. LAXT is correct insofar as sections 138 and 139 of the City Charter vest the Board of Harbor Commissioners with power and authority over the Port of Los Angeles. However, the Board of Harbor Commissioners was powerless to delegate any authority to LAXT without the express or implied approval of the City Council. As indicated, the City Council retains the power to assert jurisdiction over any action and has the same authority to act as that originally held by the Board of Harbor Commissioners, including the power to disapprove any decision of that board. (City Charter, § 32.3.) Thus, the delegation of authority to LAXT could not have occurred without, at a minimum, the implied approval of the City Council.

Therefore, the trial court properly found the delegation of authority to LAXT was effected by the City Council as the duly elected legislative body, so as to bring LAXT within the Brown Act.[4]

---

[4]In support of LAXT's contention the City Council lacked power to delegate authority held by the Board of Harbor Commissioners, LAXT invokes section 32.1(a) of the City Charter, which states in relevant part: "Notwithstanding the powers, duties and functions of the several departments, boards or bureaus of the City government as set forth in this Charter, the Mayor, subject to the approval of the Council by ordinance, adopted by a two-thirds vote of the whole of the Council, may transfer any such powers, duties or functions from one department, board or bureau to another, or consolidate the same in one or more of the departments, boards or bureaus created by this Charter or in a new department, board or bureau created by ordinance. . . . *The power of the Mayor and Council so to act as provided in this section shall not extend to the Harbor Department*, Department of Airports, the Department of Water and Power, the City Employees' Retirement System or the Department of Pensions." (Italics added.)

LAXT's reliance on City Charter section 32.1(a) is misplaced. Section 32.1(a) empowers the mayor and City Council to transfer powers, duties and functions from one department to another and specifies the power of the mayor and City Council so to act does not extend to the Harbor Department, among others. However, there is no issue here as to a transfer by the mayor or City Council of the powers of the Harbor Department to another municipal department. Further, nothing in section 32.1(a) negates the power of the City Council under

### d. *Conclusion re applicability of Brown Act to LAXT's board of directors.*

The trial court properly held LAXT's board of directors is subject to the Brown Act because it is a legislative body within the meaning of section 54952, subdivision (c)(1)(A). This interpretation is informed by the broad purpose of the Brown Act to ensure the people's business is conducted openly. Under LAXT's constrained reading of the Brown Act, the statute's mandate may be avoided by delegating municipal authority to construct and operate a port facility to a private corporation. While there is no indication LAXT was structured in an attempt to avoid the Brown Act, LAXT's narrow reading of the statute would permit that to occur. Surely that is not what the Legislature intended.[5]

### 4. *Trial court properly denied LAXT's posttrial motions.*

Based on the above contentions, LAXT argues the trial court should have granted its motion to vacate the judgment and enter a judgment of dismissal, as well as its motion for new trial. This contention necessarily fails in view of our rejection of LAXT's underlying contentions.

In addition, LAXT asserts the trial court abused its discretion in denying the motion for new trial based on newly discovered evidence after trial. The newly discovered evidence showed that one of the three directors who had been nominated by the City Council in accordance with the shareholders' agreement had resigned, leaving only two city nominees sitting among seventeen directors. Further, due to the subsequent issuance of new shares, the Harbor Department's stake in LAXT has decreased to 13.6 percent, and because the shareholders' agreement allocates one nomination for each 5 percent share, the City Council would not be able to nominate a third director. LAXT argues this new evidence demonstrates LAXT is a private corporation engaged in commerce, not an instrumentality of government.

The argument is unavailing. The issue here is whether LAXT's board of directors amounts to a "legislative body" within the meaning of section

---

section 32.3 to revisit any action taken by the Board of Harbor Commissioners. Thus, in allowing the delegation by the Harbor Department to LAXT to proceed, the City Council acted within its power by effectively ratifying the delegation.

[5]We emphasize our holding is a narrow one. LAXT's board of directors is subject to the Brown Act pursuant to section 54952, subdivision (c)(1)(A), because, inter alia, LAXT was created by an *elected legislative body*, i.e., the City Council. Had LAXT been a *preexisting* corporation which simply entered into a contractual arrangement with the Harbor Department to develop the coal facility, LAXT would not have been a creation of the City Council and LAXT's board of directors would not be subject to the Brown Act pursuant to section 54952, subdivision (c)(1)(A).

54952, subdivision (c)(1)(A). The dilution of the Harbor Department's stake in LAXT does not alter the conclusion that LAXT's board is a legislative body within the meaning of the statute.

Therefore, we reject LAXT's contention the trial court abused its discretion in denying the motion for new trial.

## 5. *Award of attorney fees to ILWU was proper.*

LAXT contends the trial court erred in making an award of attorney fees to ILWU and in the amount awarded. Its arguments are unpersuasive.

### a. *LAXT's board of directors is a "legislative body" within the meaning of section 54960.5.*

Section 54960.5, which was the basis for the trial court's award of attorney fees and costs, states in relevant part: "A court may award court costs and reasonable attorney fees to the plaintiff in an action brought pursuant to Section 54960 or 54960.1 where it is found that a *legislative body* of the local agency has violated this chapter." (Italics added.)

The Brown Act violation herein was committed by the board of directors of LAXT, not by the City Council. Obviously, LAXT's board of directors is *not* a "legislative body" within the ordinary definition of the term. Therefore, the question arises whether LAXT's board is subject to the attorney fees provision of section 54960.5.

Admittedly, the statutory scheme is not a model of drafting. Nonetheless, it would appear the extensive definition of "legislative body" set forth in section 54952 applies to the use of that term in section 54960.5. It is a fundamental principle of statutory interpretation that statutes are not construed in isolation, but rather, with reference to the entire scheme of law of which they are part so that the whole may be harmonized and retain effectiveness. (*Brown* v. *Superior Court* (1984) 37 Cal.3d 477, 484 [208 Cal.Rptr. 724, 691 P.2d 272]; *People* v. *Ledesma* (1997) 16 Cal.4th 90, 95 [65 Cal.Rptr.2d 610, 939 P.2d 1310].) Further, it is internally inconsistent to suggest that a governing board subject to the open meeting requirements of the Brown Act pursuant to the definition of "legislative body" contained in section 54952 is exempt from the Act's attorney fees provision on the ground it is not a "legislative body" within section 54960.5

Accordingly, we conclude LAXT's board of directors is a legislative body subject to the attorney fees provision of section 54960.5 of the Act.

b. *Award of attorney fees was within trial court's discretion.*

■ LAXT argues the trial court abused its discretion in awarding any attorney fees to ILWU due to the lack of any benefit to the general public. (*Common Cause* v. *Stirling* (1983) 147 Cal.App.3d 518, 524 [195 Cal.Rptr. 163].) LAXT argues ILWU's purpose in bringing this litigation was to advance the union's parochial goal of preserving the level of the prevailing wage and voiding the approval by LAXT of a contract with a nonunion employer.

By way of background, a trial court is not required to award attorney fees "to a prevailing plaintiff in every Brown Act violation. A court must still thoughtfully exercise its power under section 54960.5 examining all the circumstances of a given case to determine whether awarding fees under the statute would be unjust with the burden of showing such inequity resting on the defendant." (*Common Cause* v. *Stirling* (1981) 119 Cal.App.3d 658, 665 [174 Cal.Rptr. 200].) Considerations which the trial court should weigh in exercising its discretion include "the necessity for the lawsuit, lack of injury to the public, the likelihood the problem would have been solved by other means and the likelihood of recurrence of the unlawful act in the absence of the lawsuit." (*Ibid.*)

The public benefit from ILWU's action was sufficient to support an award of attorney fees. As discussed, LAXT asserted it was a private entity beyond the reach of the Brown Act, and it continues to adhere to that position. Therefore, had ILWU not brought this action, LAXT would have engaged in recurring violations of the Brown Act, to the detriment of the public generally. Clearly, the outcome of the lawsuit was not exclusively for the benefit of ILWU.

Accordingly, we reject LAXT's contention an award of attorney fees to ILWU is unjust.

c. *Trial court did not err in basing the attorney fees award on market rates.*

LAXT contends the $60,660 attorney fees award to ILWU is excessive. The record reflects ILWU paid its attorneys an hourly rate of $125 per hour and later, $140 per hour. However, in moving for attorney fees, ILWU requested reasonable attorney fees based on market rates, which ranged from $125 per hour to $275 per hour for the attorneys who worked on this matter. LAXT contends the trial court erred in awarding fees in excess of those actually charged by ILWU's counsel. The argument fails.

In *Serrano* v. *Unruh* (1982) 32 Cal.3d 621, 642 [186 Cal.Rptr. 754, 652 P.2d 985], which involved a claim for attorney fees under Code of Civil Procedure 1021.5, the private attorney general statute, our Supreme Court cited with approval the view of the First Circuit, which earlier held: " 'We do not think . . . that compensating a public interest organization . . . on the same basis as a private practitioner results in . . . a windfall . . . . Indeed, we are concerned that compensation at a lesser rate would result in a windfall to the defendants.' (*Palmigiano* v. *Garrahy* (1st Cir. 1980) 616 F.2d 598, 602, cert. den. . . .)" (32 Cal.3d at p. 642.) *Serrano* concluded "[s]ervices compensable under section 1021.5 are computed from their reasonable market value. The trial court was entitled to use the prevailing billing rates of comparable private attorneys as the 'touchstone' for determination of that value. Cost figures bore no reasonable relevance to calculation of the 'touchstone' figure. [Fn. omitted.]" (*Id.,* at p. 643.)

The private attorney general statute is analogous to the Brown Act's attorney fees provision in that both authorize compensation for private actions which serve to vindicate important rights affecting the public interest. (*Serrano* v. *Unruh, supra,* 32 Cal.3d at p. 632; *Common Cause* v. *Stirling, supra,* 147 Cal.App.3d at p. 524.) In *Common Cause,* a case involving attorney fees under the Brown Act, the court was guided, inter alia, by decisions involving fees under the private attorney general theory. (*Common Cause, supra,* 147 Cal.App.3d at p. 522, citing *Marini* v. *Municipal Court* (1979) 99 Cal.App.3d 829 [160 Cal.Rptr. 465] and *Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917 [154 Cal.Rptr. 503, 593 P.2d 200].) Therefore, the rationale for basing an award of attorney fees on reasonable market value is equally applicable to section 54960.5. Accordingly, the trial court was not required to base the attorney fees award on the fees actually incurred by ILWU.

### 6. *ILWU is entitled to reasonable attorney fees on appeal.*

In the respondent brief, ILWU requests reasonable attorney fees incurred in the defense of this appeal.

The issue presented is whether section 54960.5 authorizes an award of attorney fees at the appellate level. The statute provides a court may award attorney fees and costs "to the plaintiff" or "to a defendant." (§ 54960.5.) The statute does not use the terms "appellant" or "respondent." Nonetheless, we conclude section 54960.5 authorizes compensation for all hours reasonably spent, including those necessary to defend the judgment on appeal.

In *Serrano,* defendants contended no fees were recoverable for defending the fee award on appeal because the appeal did not independently meet the

requirements of Code of Civil Procedure section 1021.5. (*Serrano* v. *Unruh*, *supra*, 32 Cal.3d at p. 637.) *Serrano* disagreed, reasoning a contrary rule "would permit the fee to vary with the nature of the opposition." (*Id.*, at p. 638.) A defendant " 'cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.' [Citation.]" (*Ibid.*) Therefore, *Serrano* held that "absent circumstances rendering the award unjust, fees recoverable under section 1021.5 ordinarily include compensation for all hours reasonably spent, including those necessary to establish and defend the fee claim." (*Id.*, at p. 639.)

By a parity of reasoning, we conclude ILWU is entitled under section 54960.5 to recover reasonable attorney fees incurred in defending this appeal.[6]

## DISPOSITION

The judgment and postjudgment order are affirmed. ILWU·shall recover costs and reasonable attorney fees on appeal.

Croskey, J., and Aldrich, J., concurred.

· A petition for a rehearing was denied February 10, 1999, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied April 14, 1999.

---

[6]If our interpretation of various aspects of the Brown Act is not what the Legislature intended, the statutory scheme could use clarification. (See *Malibu Committee for Incorporation* v. *Board of Supervisors* (1990) 222 Cal.App.3d 397, 410 [271 Cal.Rptr. 505], review den.; *Mir* v. *Charter Suburban Hospital* (1994) 27 Cal.App.4th 1471, 1487, fn. 7 [33 Cal.Rptr.2d 243], review den.; *Las Tunas Beach Geologic Hazard Abatement Dist.* v. *Superior Court* (1995) 38 Cal.App.4th 1002, 1016, fn. 10 [45 Cal.Rptr.2d 529], review den.; *United Farm Workers of America* v. *Agricultural Labor Relations Bd.* (1995) 41 Cal.App.4th 303, 321 [48 Cal.Rptr.2d 696], review den.; *Denny's, Inc.* v. *City of Agoura Hills* (1997) 56 Cal.App.4th 1312, 1329, fn. 9 [66 Cal.Rptr.2d 382].)