[No. G030931. Fourth Dist., Div. Three. July 29, 2003.]

RICHARD P. MCKEE, Plaintiff and Appellant, v.
ORANGE UNIFIED SCHOOL DISTRICT, Defendant and Respondent.

**COUNSEL**

Moskowitz, Brestoff, Winston & Blinderman, Dennis A. Winston and Barbara S. Blinderman for Plaintiff and Appellant.

Parker & Covert, Spencer E. Covert and Jonathan J. Mott for Defendant and Respondent.

## Opinion

**FYBEL, J.**—Richard P. McKee appeals from the trial court's order denying his petition for entry of a writ of mandate based on the Orange Unified School District's (OUSD) alleged violations of the Ralph M. Brown Act (Brown Act), Government Code section 54950 et seq. (All further statutory references are to the Government Code.) The trial court denied McKee's petition because he "lacks standing to maintain this action as he is not a resident of the County of Orange and therefore, is not an 'interested person,' within the meaning of Government Code Sections 54960 or 54960.1."

■ We conclude a citizen of the State of California is an "interested person" within the meaning of sections 54960 and 54960.1 and may sue a legislative body of a local agency as provided in those sections for violations of the Brown Act. We therefore reverse and remand the matter to the trial court for a determination on the merits of McKee's petition.

## BACKGROUND

OUSD owned Barham Ranch in Orange County (County). Barham Ranch, which consisted of over 500 acres of undeveloped land, was bordered by County parklands on the north, south, and west. OUSD hoped to acquire an easement over County parklands to provide a means of access to Barham Ranch. OUSD learned the County was considering the adoption of an ordinance which would impose deed restrictions on County parklands and would make it more difficult for OUSD to obtain the easement. OUSD was concerned the County's proposed ordinance was directed at Barham Ranch "in order to reduce the value of that property, in the event of future acquisition of it by the County."

OUSD is governed by an elected seven-member board of education (the board). On June 14, June 28, and July 19, 2001, the board held closed sessions of regular meetings it described as " 'CONFERENCE WITH LEGAL COUNSEL—POTENTIAL LITIGATION, ' ... [¶] ... County of Orange Ordinance Adding Article 10 of Title II, Sections 2–5–300 and 2–5–301 on Park Use Restrictions on County Regional Harbors, Beaches, and Park Lands." OUSD explained the purpose of these closed session meetings was to discuss whether there were grounds for legal action against the County concerning the proposed ordinance. Special legal counsel for OUSD sent a letter to the County expressing OUSD's concerns about the proposed ordinance relating to Barham Ranch and OUSD's desire to acquire an access easement over the County's parkland property. The County responded, informing OUSD that OUSD would need to submit a written proposal for an access easement, including the location, size, and proposed use.

The board scheduled a special meeting for August 27, 2001. The agenda for that meeting included a closed session item 7A described as: "Conference with Real Property Negotiator [¶] Government Code 54956.8 [¶] Property: Barham Ranch [¶] Negotiating Parties: County of Orange, Orange Unified School District [¶] Under negotiation: Price and terms of payment."

McKee is a resident and taxpayer of the City of La Verne, the County of Los Angeles, and the State of California. McKee describes himself as "active in pursuing claims for open government against legislative bodies in Southern California under the Ralph M. Brown Act ... in the past" and "President of the Board of Directors of the California First Amendment Coalition ('CFAC'), a group which advocates and defends the principles of the First Amendment and open government throughout California."

McKee was aware of the controversy over Barham Ranch. He also knew that residents living in the Barham Ranch area regularly reviewed OUSD's agendas because they were concerned about OUSD's intentions regarding the land and "want[ed] to preserve its character." McKee reviewed the agenda for the meeting scheduled for August 27, 2001. McKee believed the agenda was confusing because he thought it indicated a decision had already been made by OUSD to sell or transfer Barham Ranch. McKee attended the August 27 meeting and addressed his confusion about the agenda entry. McKee informed the board that during the closed session, "according to the agenda as worded, all the Board could discuss was the sale, exchange, or lease of all of Barham Ranch to the County." McKee explained "the agenda entry did not identify the identity of the OUSD's real property negotiator." The board then identified its negotiators, "but went into closed session without providing any other clarifying information."

After the closed session on August 27, the board made the following announcement: "In response to the County considering deed restrictions on all park property, the Orange Unified School District previously notified the County that it was interested in acquiring an access easement for use in connection with our Barham Ranch property. The County requested a written proposal, including location and size of the easement requested. [¶] The Board met in Closed Session tonight to discuss this matter and requested legal counsel to continue negotiations on this matter."

On August 30, 2001, McKee served upon OUSD a written demand for cure or correction of various Brown Act violations that he contended occurred on August 27. McKee alleged OUSD was "not authorized by agenda item 7A to hold a closed session to discuss the location and size of a potential easement that lies somewhere unidentified, within property owned by the County of Orange instead of the sale of Barham Ranch property."

McKee reviewed the board's agendas from March through July 2001. McKee concluded the board had improperly adjourned to closed sessions on June 14, June 28, and July 19, 2001 in violation of the Brown Act. McKee believed the agendas for those three meetings did not state whether the authority for the closed sessions was under subdivision (b) or (c) of section 54956.9, and no "existing facts and circumstances" justified those closed sessions.

On September 28, 2001, McKee received a response from OUSD, stating that on September 20 the board "took no action with respect to [McKee's] request to cure and correct."

On October 11, 2001, McKee filed a verified petition for a writ of mandate for an injunction and declaratory relief based on allegations that OUSD violated sections 54953, 54954.3, 54954.5, 54956, 54956.9, and 54962, part of the Brown Act. OUSD answered the petition and McKee responded to the answer.

McKee filed a motion in support of his petition for entry of a writ of mandate based on OUSD's violations of the Brown Act alleged in the verified petition. McKee sought an order requiring the board to: (1) rescind OUSD's closed session action of August 27, 2001; (2) tape-record all future closed sessions for a period of three years, and maintain these recordings according to law; (3) take discussion and action only on those items of business adequately described on a regular meeting agenda or a special meeting notice; (4) consider only the items of business, and no others, described on the posted notice of a special meeting; (5) announce the subdivision authorizing any closed session on anticipated litigation and make available to the public the "existing facts and circumstances," when required, upon which an anticipated litigation closed session is based; (6) consider and act upon in closed session only items of business properly agendized or noticed; (7) discuss and act upon in closed session only those items expressly authorized to be discussed and acted upon in closed session; and (8) report the vote or abstention of each board member present on each action taken in closed session.

McKee also sought a declaration that OUSD and the board were required to (1) take discussion and action only on those items of business adequately described on a regular meeting agenda or a special meeting notice; (2) consider only the items of business listed on the posted notice for a special meeting; (3) announce prior to the closed session the subdivision authorizing a closed session pursuant to section 54956.9 on anticipated litigation; (4) consider and act upon in closed session only the items of business properly agendized or noticed; (5) discuss and act upon in closed session only those

items expressly authorized to be discussed and acted upon in closed session; and (6) report the vote or abstention of each board member present on each action taken in closed session.

A hearing on McKee's petition was held in June 2002. The trial court denied the petition on the basis that McKee "lacks standing to maintain this action as he is not a resident of the County of Orange and therefore, is not an 'interested person,' within the meaning of Government Code Sections 54960 or 54960.1." McKee appealed.

## DISCUSSION

### A. *OUSD's Motion to Dismiss Appeal Based on Mootness*

Three months after McKee filed his notice of appeal, the board voted to sell Barham Ranch and entered into an acquisition agreement with the County. OUSD filed a motion to dismiss this appeal on the ground McKee's claims of Brown Act violations are moot because of the sale of Barham Ranch. OUSD contends any complaint about the sufficiency of agenda descriptions for discussion relating to OUSD obtaining an access easement for Barham Ranch over County property is moot because the sale eliminated the need for an access easement. This court ordered the motion to dismiss be considered in conjunction with the decision on appeal.

"A case is moot when any ruling by this court can have no practical impact or provide the parties effectual relief." (*Woodward Park Homeowners Assn. v. Garreks, Inc.* (2000) 77 Cal.App.4th 880, 888 [92 Cal.Rptr.2d 268].) This case does not present a situation where a ruling by this court can neither have any practical impact nor provide the parties relief.

McKee's motion sought, inter alia, an order establishing procedures for the board's meetings, geared to prevent violations of the Brown Act by, for example, requiring the board to tape-record all future closed sessions for three years, and take discussion and action only on those items of business adequately described in a regular meeting agenda or a special meeting notice. McKee's motion also sought a declaration that OUSD and the board are required to, inter alia, discuss and act only on those items of business adequately described on a regular meeting agenda or a special meeting notice.

OUSD's sale of Barham Ranch does not render the above requested relief unavailable and therefore does not render this appeal moot. OUSD's motion to dismiss the appeal is denied.

B. *Standard of Review*

The issue presented in this case is whether McKee qualifies as an interested person under sections 54960, subdivision (a) and 54960.1, subdivision (a), with standing to sue OUSD for Brown Act violations. ■ We review de novo the trial court's determination that McKee lacked standing under the Brown Act. "As an appellate court, ' ... we "conduct independent review of the trial court's determination of questions of law." [Citation.] ■ Interpretation of a statute is a question of law. [Citations.] Further, application of the interpreted statute to undisputed facts is also subject to our independent determination. [Citation.]' " (*International Longshoremen's & Warehousemen's Union v. Los Angeles Export Terminal, Inc.* (1999) 69 Cal.App.4th 287, 293 [81 Cal.Rptr.2d 456].)

C. *The Phrase "Interested Person" as Used in Sections 54960, Subdivision (a) and 54960.1, Subdivision (a) Means a Citizen of the State of California.*

McKee contends he had standing to file his petition and motion because "under the Brown Act—'interested persons' entitled to sue to enforce its provisions are not confined to residents within the jurisdiction of the legislative body involved, nor to taxpayers therein." We agree.

The Brown Act's express statement of intent provides: "In enacting this chapter, the Legislature finds and declares that the public commissions, boards and councils and the other public agencies in this State exist to aid in the conduct of the people's business. It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly. [¶] *The people of this State* do not yield their sovereignty to the agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created." (§ 54950, italics added; Stats. 1953, ch. 1588, § 1, p. 3270.) "The Brown Act (§ 54950 et seq.), adopted in 1953, is intended to ensure the public's right to attend the meetings of public agencies.... The Act thus serves to facilitate public participation in all phases of local government decisionmaking and to curb misuse of the democratic process by secret legislation of public bodies." (*International Longshoremen's & Warehousemen's Union v. Los Angeles Export Terminal, Inc., supra,* 69 Cal.App.4th 287, 293.)

The principles articulated in the Brown Act's statement of intent echo the preamble to the United States Constitution, beginning "We the People," and President Lincoln's statement in the Gettysburg Address that our government

is one "of the people, by the people, for the people." The Brown Act similarly reflects the objective of the Declaration of Independence to provide an open government: "We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness.—That to secure these rights, Governments are instituted among Men, *deriving their just powers from the consent of the governed ....*" (Italics added.)

The Brown Act, by its own terms, requires, inter alia: (1) "[a]ll meetings of the legislative body of a local agency shall be open and public, and all persons shall be permitted to attend any meeting of the legislative body of a local agency, except as otherwise provided in this chapter" (§ 54953, subd. (a)); (2) "[a]t least 72 hours before a regular meeting, the legislative body of the local agency, or its designee, shall post an agenda containing a brief general description of each item of business to be transacted or discussed at the meeting, including items to be discussed in closed session" (§ 54954.2, subd. (a)); (3) "[n]o action or discussion shall be undertaken on any item not appearing on the posted agenda ..." except under specifically enumerated circumstances (*ibid.*); and (4) "[e]very agenda for regular meetings shall provide an opportunity for members of the public to directly address the legislative body on any item of interest to the public, before or during the legislative body's consideration of the item, that is within the subject matter jurisdiction of the legislative body, provided that no action shall be taken on any item not appearing on the agenda unless the action is otherwise authorized ..." (§ 54954.3, subd. (a)).

Section 54960, subdivision (a) states: "The district attorney or *any interested person* may commence an action by mandamus, injunction or declaratory relief for the purpose of stopping or preventing violations or threatened violations of this chapter by members of the legislative body of a local agency or to determine the applicability of this chapter to actions or threatened future action of the legislative body, or to determine whether any rule or action by the legislative body to penalize or otherwise discourage the expression of one or more of its members is valid or invalid under the laws of this state or of the United States, or to compel the legislative body to tape record its closed sessions as hereinafter provided." (Italics added.)

Section 54960.1, subdivision (a) states in part: "The district attorney or *any interested person* may commence an action by mandamus or injunction for the purpose of obtaining a judicial determination that an action taken by a legislative body of a local agency in violation of Section 54953, 54954.2, 54954.5, 54954.6, 54956, or 54956.5 is null and void under this section." (Italics added.)

As pointed out by the trial court, there is a dearth of authority defining the scope of the phrase "interested person" as used in sections 54960 and 54960.1. In determining whether McKee qualifies as an interested person under these statutes, we must recognize "the Brown Act is a remedial statute that must be construed liberally so as to accomplish its purpose." (*Epstein v. Hollywood Entertainment Dist. II Bus. Improvement Dist.* (2001) 87 Cal.App.4th 862, 869 [104 Cal.Rptr.2d 857]; see *People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 313 [58 Cal.Rptr.2d 855, 926 P.2d 1042] ["civil statutes for the protection of the public are, generally, broadly construed in favor of that protective purpose"].)

Relying on *Sacramento Newspaper Guild v. Sacramento County Bd. of Suprs.* (1968) 263 Cal.App.2d 41, 46 [69 Cal.Rptr. 480], OUSD argues that because McKee was not an "elector or taxpayer" of Orange County or OUSD, he did not have standing to bring his Brown Act claims. In *Sacramento Newspaper Guild,* the court stated, "A provision of the Brown Act, section 54960, authorizes any 'interested person' to seek legal restraint against violations or threatened violations. Defendants do not question the Newspaper Guild's standing to sue. The complaint alleges that the Newspaper Guild is a labor organization composed of professional working newspaper men and women. Whether that allegation makes out adequate standing to sue is at least questionable. [Citations.] *The right to disclosure is an attribute of citizenship,* not possessed in any increased degree by persons or groups whose interest in access to news is economic. [Citation.] Section 54950's broad declaration of the public's right to disclosure should logically *extend* standing to any county elector. Had the county raised the issue in the trial court, amendment of the complaint to add appropriate parties and allegations would have been little more than a matter of mechanics. Under the circumstances, there is substantial compliance with section 54960." (*Id.* at p. 46, italics added.) *Sacramento Newspaper Guild* does not hold that the phrase "interested person" under the Brown Act is limited to county electors; instead it holds that the Brown Act's scope includes county electors. Most significantly, *Sacramento Newspaper Guild* acknowledges that the right to disclosure under the Brown Act is an attribute of *citizenship* of the State of California. McKee declared he is a citizen of the State of California.

Although *Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 436–437 [261 Cal.Rptr. 574, 777 P.2d 610] involved voter outreach programs and did not involve the Brown Act, the Supreme Court's analysis is instructive. In that case, our Supreme Court stated: "The purpose of a standing requirement is to ensure that the courts will decide only actual controversies between parties with a sufficient interest in the subject matter of the dispute to press their case with vigor. [Citations.] This purpose is met when, as here, plaintiffs possess standing to have the underlying controversy adjudicated and the desired relief granted after a trial on the merits." (*Id.* at pp. 439–440.) The

Supreme Court held, "We find it unnecessary to reach the question whether plaintiffs have standing to seek an injunction under Code of Civil Procedure section 526a, because there is an independent basis for permitting them to proceed. The ultimate relief sought in this action includes a writ of mandate compelling adoption of the employee deputization program. ' " '[W]here the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the relator need not show that he has any legal or special interest in the result, since it is sufficient that he is interested as a citizen in having the laws executed and the duty in question enforced.' " ' [Citations.] The question in this case involves a public right to voter outreach programs, and plaintiffs have standing as citizens to seek its vindication." (*Id.* at p. 439; see also *Connerly v. State Personnel Bd.* (2001) 92 Cal.App.4th 16, 29 [112 Cal.Rptr.2d 5] [In another non-Brown Act case, the court stated, "Citizen suits may be brought without the necessity of showing a legal or special interest in the result where the issue is one of public right and the object is to procure the enforcement of a public duty.... Citizen suits promote the policy of guaranteeing citizens the opportunity to ensure that governmental bodies do not impair or defeat public rights"], citation omitted.)

By analogy, and following the rationale expressed in *Common Cause of California v. Board of Supervisors, supra*, 49 Cal.3d 432, McKee, as a California citizen, has an interest in seeking vindication of the public's right to know what legislators are doing and the public's ability to ensure democratically elected government officials are following the law. The Brown Act's statement of intent also supports the interpretation of the phrase "interested person" as meaning a California citizen: "The people of this State do not yield their sovereignty to the agencies which serve them." (§ 54950; Stats. 1953, ch. 1588, § 1, p. 3270.)

OUSD cites *Associated Boat Industries v. Marshall* (1951) 104 Cal.App.2d 21 [230 P.2d 379] and *Environmental Protection Information Center v. Department of Forestry & Fire Protection* (1996) 43 Cal.App.4th 1011 [50 Cal.Rptr.2d 892] for the proposition that to have standing, an interested person must have a direct, and not merely consequential, interest in the litigation. Neither of the two cases cited by OUSD involved the Brown Act, and they are distinguishable. Neither case addressed whether a citizen of the State of California has standing as an interested person under sections 54960 and 54960.1 to sue a legislative body of a county even though the citizen is not a resident or taxpayer of that county.

We believe the rationale for determining standing under sections 54960 and 54960.1 is set forth in *Common Cause v. Board of Supervisors, supra*, 49 Cal.3d 432, 439, as we have described. The restrictions OUSD proposes on

the scope of the phrase "interested person" are the type the Legislature should impose if it deems them appropriate. We therefore reverse and remand the matter to the trial court for a determination on the merits of the petition. We do not express any opinion on the merits.

OUSD argues "[s]tanding to *sue* is not analogous to the right of any person to attend, or speak at, a meeting of a local public agency." OUSD is correct. ■ The Brown Act does refer to the right of the "*public*" to its open government provisions (§ 54954.3, subd. (a)), but confers the power to sue a legislative body of a local agency on the district attorney or any interested person (§§ 54960, 54960.1). But for the reasons discussed above, an interested person means a citizen of the State of California.

OUSD contends the trial court's order denying McKee's petition should be denied because McKee failed to establish that the conduct complained of constituted "action taken" under section 54960.1. OUSD argues in its brief on appeal "[a]ppellant failed to either allege or present evidence that the direction given by [the board] to its negotiator was an 'action' as defined by the Brown Act and appellate decision." OUSD did not raise this argument below, and is therefore precluded from raising it for the first time on appeal.

## DISPOSITION

The order is reversed. The matter is remanded to the trial court for a determination of the merits of McKee's petition. In the interests of justice, neither party shall recover costs or attorney fees incurred in this appeal.

Sills, P. J., and Rylaarsdam, J., concurred.

A petition for a rehearing was denied August 20, 2003, and appellant's petition for review by the Supreme Court was denied November 12, 2003.