[No. B179548. Second Dist., Div. Two. Nov. 23, 2005.]

RICHARD P. MCKEE et al., Plaintiffs and Respondents, v.
LOS ANGELES INTERAGENCY METROPOLITAN POLICE
APPREHENSION CRIME TASK FORCE, Defendant and Appellant.

COUNSEL

Liebert Cassidy Whitmore, Richard M. Kreisler and Debra L. Bray for Defendant and Appellant.

Moskowitz, Brestoff, Winston & Blinderman, Dennis A. Winston and Barbara S. Blinderman for Plaintiffs and Respondents.

## OPINION

**ASHMANN-GERST, J.**—Appellant Los Angeles Interagency Metropolitan Police Apprehension Crime Task Force (L.A. Impact) appeals the trial court order compelling it to comply with the open meeting requirements of the Ralph M. Brown Act (the Brown Act) (Gov. Code, § 54950 et seq.).[1]

We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

L.A. Impact was organized by the Los Angeles County Police Chiefs Association in 1991 to coordinate the efforts of the police departments and

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

other law enforcement agencies in Los Angeles County to fight drug trafficking and money laundering. A memorandum of understanding (MOU) was prepared and numerous city councils approved it. For example, the City of Claremont City Council authorized its police chief to enter into the MOU. Also, by resolution, the City of Hermosa Beach City Council and the City of Manhattan Beach City Council authorized participation in L.A. Impact by adopting a joint powers agreement and MOU.

L.A. Impact then began its operations, and has been quite successful. According to one report, "[s]ince its founding, L.A. Impact has arrested 3,600 people and seized 123,000 pounds of cocaine with a street value of $5 billion [and] has taken in $80 million in cash and one Lear Jet."

Because L.A. Impact does not post agendas to the meetings of its board of directors or its executive council and does not permit public attendance at its meeting, on March 25, 2004, respondents Richard P. McKee and Chris Bray filed a petition for writ of mandate, seeking to compel compliance with the Brown Act. Respondents' motion to issue peremptory writ of mandate was heard on October 7, 2004.

Following oral argument, the trial court granted respondents' petition for writ of mandate, finding that (1) "L.A. IMPACT is a 'joint powers authority' authorized by the agreement (MOU) of cities within Los Angeles County, pursuant to [section] 6500 *et seq.*, to jointly exercise law enforcement powers common to those member-cities of L.A. IMPACT"; (2) L.A. Impact "is a 'local agency' as defined by the Brown Act"; and (3) L.A. Impact's "Board of Directors and Executive Council are both legislative bodies as defined by the Brown Act." The trial court further found that L.A. Impact had violated the Brown Act by failing to adhere to its open meeting requirements, and ordered L.A. Impact, its board of directors, and its executive council to obey the open meeting provisions of the Brown Act.

Judgment was entered, and this timely appeal followed.

## DISCUSSION

### I. *Standard of review*

Because the central issue presented is the applicability of the Brown Act, specifically whether L.A. Impact is a local public agency and whether its

board of directors and executive council are legislative bodies within the meaning of sections 54951 and 54952, we conduct an independent review of the trial court's judgment. (*International Longshoremen's & Warehousemen's Union v. Los Angeles Export Terminal, Inc.* (1999) 69 Cal.App.4th 287, 293 [81 Cal.Rptr.2d 456] (*International Longshoremen's*).)

## II. *The Brown Act's purpose, scope, and broad construction*

■ "The Brown Act [citation], adopted in 1953, is intended to ensure the public's right to attend the meetings of public agencies. [Citation.] To achieve this aim, the Act requires, inter alia, that an agenda be posted at least 72 hours before a regular meeting and forbids action on any item not on that agenda. [Citations.] The Act thus serves to facilitate public participation in all phases of local government decisionmaking and to curb misuse of the democratic process by secret legislation of public bodies." (*International Longshoremen's, supra,* 69 Cal.App.4th at p. 293; see also *Epstein v. Hollywood Entertainment Dist. II Bus. Improvement Dist.* (2001) 87 Cal.App.4th 862, 868 [104 Cal.Rptr.2d 857] (*Epstein*).)

"The Brown Act dictates that '[a]ll meetings of the legislative body of a local agency shall be open and public, and all persons shall be permitted to attend any meeting of the legislative body of a local agency, except as otherwise provided in this chapter.' (§ 54953, subd. (a).)" (*International Longshoremen's, supra,* 69 Cal.App.4th at p. 294; see also *Epstein, supra,* 87 Cal.App.4th at p. 868.)

■ The two pivotal questions before us de novo are: (1) whether L.A. Impact constitutes a "local agency" as that phrase is defined in section 54951; and (2) whether L.A. Impact's board of directors and executive council are legislative bodies within the meaning of section 54952. In addressing these issues, "we are mindful that as a remedial statute, the Brown Act should be construed liberally in favor of openness so as to accomplish its purpose and suppress the mischief at which it is directed." (*International Longshoremen's, supra,* 69 Cal.App.4th at p. 294; see also *Epstein, supra,* 87 Cal.App.4th at p. 869.)

## III. *The trial court properly concluded that L.A. Impact is subject to the open meeting requirements of the Brown Act*

### A. *L.A. Impact is a local public agency*

Section 54951 defines a "local agency" as "a county, city, whether general law or chartered, city and county, town, school district, municipal corporation, district, political subdivision, or any board, commission or agency

thereof, or other local public agency." Broadly construing the phrase "other local public agency," we conclude that L.A. Impact satisfies this definition. (*Torres v. Board of Commissioners* (1979) 89 Cal.App.3d 545, 549–550 [152 Cal.Rptr. 506].)

■ The parties implicitly, and correctly, agree that in order for L.A. Impact to be considered a public agency, it had to be created by statute or Constitution. "A typical governmental instrumentality, if one can be said to exist, is created by an enabling statute that prescribes the powers and duties of the instrumentality, and specifies that it is to be managed by a board selected by the government in a manner consistent with the enabling law. The instrumentality is typically established as a separate juridical entity, with the powers to hold and sell property and to sue and be sued." (*Amoco Corp. v. C.I.R.* (7th Cir. 1998) 138 F.3d 1139, 1146; see also *Imperial Irrigation Dist. v. State Wat. Resources Control Bd.* (1990) 225 Cal.App.3d 548, 567 [275 Cal.Rptr. 250] [" '[t]he powers of public [agencies] are derived from the statutes which create them and define their functions' "].) Applying these legal principles, under the facts presented herein, L.A. Impact only constitutes a public agency if it was formed under the Joint Exercise of Powers Act (the JPA) (§ 6500 et seq.).

■ Under the JPA, a separate public entity can only be created by agreement. (§ 6503.5; see also *Brassinga v. City of Mountain View* (1998) 66 Cal.App.4th 195, 211 [77 Cal.Rptr.2d 660] [absent a joint powers agreement, sections 6506 and 6507 are inapplicable].) The trial court found that there was no agreement between the cities to create L.A. Impact as a separate entity.[2] Substantial evidence does not support this finding. (*Wolf v. Superior Court* (2004) 114 Cal.App.4th 1343, 1351 [8 Cal.Rptr.3d 649].) Rather, as set forth below, the evidence overwhelmingly indicates the cities' intent, through the MOU, to create a separate entity (L.A. Impact) to target crime.

L.A. Impact was created by the MOU, with the authority to employ municipalities' police powers and public funds throughout Los Angeles to fight drugs, money laundering, and terrorism. Numerous cities throughout Los Angeles County authorized participation in the MOU.

---

[2] The trial court found that although there was no agreement to create L.A. Impact as a separate entity, it nevertheless was a joint powers authority, an entity subject to suit. We disagree with this analysis. We conclude that absent an agreement to create a legally separate entity, an entity pursuant to the JPA cannot exist. As discussed, we also conclude that the evidence provided in the appellate record indicates that an agreement to create a separate entity did in fact exist, giving rise to a separate public entity subject to the Brown Act.

In accordance with the terms of the MOU, L.A. Impact is governed by a board of directors and executive council, with operations conducted under a separate command structure.

It is a fiscally separate entity, subject to strict accounting procedures. According to the MOU, funding for L.A. Impact's activities is obtained through public grants routed through member cities, through contributions of personnel and equipment contributed by member cities, and primarily through the division of the proceeds of seized assets from the activities that L.A. Impact decides to target. It even determines its own formula for the distribution of proceeds of assets it seizes. In fact, as of 2004, it had an "operating account" of over $9 million, of which over $5 million was attributable to the asset forfeitures L.A. Impact had secured.

Also, pursuant to the MOU, L.A. Impact can enter into contracts, which it has done. It purchased its own "rotorcraft" and arranged with the City of Pasadena to hangar and maintain it at the Pasadena Heliport.

Because of these facts, *Timberlake By Timberlake v. Benton* (M.D.Tenn. 1992) 786 F.Supp. 676 (*Timberlake*) and *Hervey v. Estes* (9th Cir. 1995) 65 F.3d 784 (*Hervey*) are readily distinguishable. In *Timberlake*, the plaintiff brought an action pursuant to title 42 United States Code section 1983 (section 1983) "alleging a violation of her constitutional rights when the vehicle in which she was riding was stopped by officers of the 19th Judicial District Drug Task Force and she was strip searched in the back seat of a patrol car at the scene." (*Timberlake, supra,* at p. 680.) "Defendant Jack Uffelman, sued in his official capacity as the director of the 19th Judicial District Drug Task Force, [sought] summary judgment on the ground that the Task Force is not a 'person' under 42 U.S.C. § 1983 and therefore . . . not amenable to suit." (*Ibid.*)

The district court agreed with the defendant and granted his motion for summary judgment. (*Timberlake, supra,* 786 F.Supp. at p. 684.) It found that although the task force has a board of directors and a unique source of funding, there was no "explicit language" in the agreement that formed the task force indicating that it was a separate legal entity. (*Id.* at p. 682.) In so ruling, the district court also considered evidence that each officer assigned to the task force remained an employee of the city or county assigning him and his salary was paid by that city or county. (*Id.* at pp. 682–683.) Ultimately, the district court concluded that "in the absence of clear indications that the Task Force is an entity, the Court will not imply its existence." (*Id.* at p. 683.)

In *Hervey*, "[l]aw enforcement officers conducted a military-style raid to search for a methamphetamine laboratory" and the subjects of the search brought an action pursuant to section 1983 against Tahoma Narcotics Enforcement Team (TNET), an "intergovernmental task force made up of various local, county and state agencies with authority to investigate suspected drug operations." (*Hervey, supra,* 65 F.3d at p. 786.) The district court granted TNET's motion for summary judgment and one of the plaintiffs appealed. (*Id.* at p. 791.)

The Ninth Circuit affirmed, reasoning that TNET was not subject to suit under section 1983 because it merely was "an intergovernmental association" and the plaintiff "provided insufficient evidence that the entities that created TNET intended to create a separate legal entity subject to suit." (*Hervey, supra,* 65 F.3d at p. 792.) Looking at the language contained in the agreement that formed TNET, the Ninth Circuit concluded that a separate legal entity was not contemplated. Specifically, TNET did not have an operating budget, its member entities retained responsibility for the employment, salary, benefits, and terms and conditions of all employees, and unit personnel were deemed to be continuing under the employment of the member entities. (*Ibid.*) Finally, distinguishing TNET from other intergovernmental agencies, the court noted that there was nothing in the agreement that indicated that TNET had been created or approved by acts of state legislatures. (*Ibid.*)

In contrast, as set forth above, there is ample evidence that L.A. Impact was intended to be a separate legal entity. Moreover, unlike the entities at issue in *Timberlake* and *Hervey*, the evidence in the instant case demonstrates that L.A. Impact operated as a separate legal entity after its formation.

L.A. Impact argues that the absence of any specific language indicating the creation of a separate entity supports the inference that no separate entity was created by agreement.[3] In light of the foregoing evidence, this contention is of no consequence. The language of the MOU and L.A. Impact's actions in accordance therewith evinces an agreement that L.A. Impact would function as a separate legal entity. Accordingly, Attorney Leland C. Dolley's opinion in 1991 that the executive council did not intend L.A. Impact to be a separate entity is simply a contrary legal conclusion not supported by the evidence.

---

[3] Per L.A. Impact's request, we took judicial notice of certain city resolutions and joint powers agreements wherein those cities expressly created separate joint powers authorities. The fact that in those situations express language was utilized to create separate joint powers entities does not compel the conclusion that no separate legal entity was created herein.

The fact that not all city councils may have formally agreed to the MOU is irrelevant. Once at least two city councils agreed to create L.A. Impact as a separate entity, as we conclude occurred, it became a local public agency whose legislative body is subject to the Brown Act. (§ 6502 ["two or more public agencies by agreement may jointly exercise any power common to the contracting parties"].)[4]

■ Bolstering our conclusion is the fact that the police chiefs could not have entered into this task force without the cities' authorization. Section 6502 requires a legislative body's approval before "public agencies by agreement may jointly exercise any power common to the contracting parties." As the trial court correctly noted, nothing in Penal Code section 830.1 (which sets forth the authority of peace officers) gives "police chiefs as individuals or the police chiefs association as a private organization the power to form a permanent joint task force with permanent governing bodies utilizing city employees and equipment." Given that L.A. Impact could not have come into existence without the cities' approval, it follows that the cities created the task force. (*Epstein, supra*, 87 Cal.App.4th at pp. 870–871.)

B. *L.A. Impact's board of directors and executive council are legislative bodies*

■ "The term 'legislative body' has numerous definitions, grouped together in section 54952." (*International Longshoremen's, supra*, 69 Cal.App.4th at p. 294.) Subdivision (a) provides that "legislative body" includes "[t]he governing body of a local agency or any other local body created by state or federal statute." (§ 54952, subd. (a).)

Here, L.A. Impact's board of directors and executive council are "governing bod[ies]" of a local agency. (§ 54952, subd. (a).) According to the MOU, the board of directors is "responsible for establishing policy and overall strategy for the Executive Council." And, the executive council directs the "policy, procedures and affairs of the organization." Undeniably, L.A. Impact's board of directors and executive council are legislative bodies,[5] whose meetings are subject to the Brown Act.

---

[4] For this reason, although we granted respondents' request for judicial notice, we need not rely upon these city documents to affirm the trial court judgment.

[5] Because we conclude that L.A. Impact's board of directors and executive council are legislative bodies of a local agency, it follows that L.A. Impact was a properly named defendant. (See § 54960 ["any interested person may commence an action by mandamus . . . for the purpose of stopping or preventing violations or threatened violations of this chapter by members of the legislative body of a local agency"].)

Alternatively, the Brown Act applies to L.A. Impact's board of directors and executive council pursuant to section 54952, subdivision (c)(1)(A). That statute provides, in relevant part, that a legislative body includes: "A board . . . or other multimember body that governs a private corporation, limited liability company, or other entity that either: [¶] (A) Is created by the elected legislative body in order to exercise authority that may lawfully be delegated by the elected governing body to a private corporation, limited liability company, or other entity." (§ 54952, subd. (c)(1)(A).) L.A. Impact's board of directors and executive council are "board[s]" or "multimember bod[ies]" that govern an entity, and L.A. Impact was delegated with authority possessed by city councils to exercise municipalities' police powers with public funds. Also, as set forth above, various municipalities in Los Angeles County were involved in the creation of L.A. Impact. Consequently, L.A. Impact's board of directors and executive council are legislative bodies subject to the Brown Act. (*Epstein, supra,* 87 Cal.App.4th at pp. 870–872; *International Longshoremen's, supra,* 69 Cal.App.4th at p. 295.)

### IV. *Public policy does not compel a different result*

Finally, L.A. Impact urges that public policy requires that its meetings not be open to the public. It contends that "[w]hile the public right of access to legislative bodies is supported by strong public policy, an equally important interest to our democratic society is for law enforcement personnel to enforce criminal laws effectively and as safely as possible." For that reason, L.A. Impact's meetings regarding task force strategies and operations should not be subject to public disclosure. What L.A. Impact ignores, however, is that not all of its meetings are required to be open to the public. (See, e.g., § 54957; *Kleitman v. Superior Court* (1999) 74 Cal.App.4th 324, 331 [87 Cal.Rptr.2d 813].) For example, section 54957.8 allows for closed meetings of multijurisdictional drug law enforcement agencies in order "to prevent the impairment of ongoing law enforcement investigations, to protect witnesses and informants, and to permit the discussion of effective courses of action in particular cases." (§ 54957.8.) And, section 54957 was amended in 2002 to provide for greater confidentiality for local and state public meetings when issues of public safety are being discussed. Given these (and other) exceptions to the open meeting requirements of the Brown Act, we hardly believe that the Legislature intended crime-fighting-strategy meetings to be open to the public.

## DISPOSITION

The judgment of the trial court is affirmed. Respondents are entitled to costs on appeal.

Boren, P. J., and Doi Todd, J., concurred.

A petition for a rehearing was denied December 16, 2005, and appellant's petition for review by the Supreme Court was denied February 18, 2006, S140034. Chin, J., did not participate therein.