TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 24-102 |
| of | : | |
| | : | May 8, 2025 |
| ROB BONTA | : | |
| Attorney General | : | |
| | : | |
| HEATHER THOMAS | : | |
| Deputy Attorney General | : | |

The HONORABLE REGINA A. GARZA, COUNTY COUNSEL OF MADERA COUNTY, has requested an opinion on a question relating to the Ralph M. Brown Act (Brown Act).[1]

**QUESTION PRESENTED AND CONCLUSION**

Is the Madera County Regional Water Management Group subject to the Brown Act?

Yes. The Madera County Regional Water Management Group is subject to the Brown Act.

**BACKGROUND**

A regional water management group is an entity defined and created by the Integrated Regional Water Management Planning Act (the Water Planning Act).[2] The California Legislature originally passed the Water Planning Act in 2002 to create a mechanism by which different water agencies in a particular region can work together to

_____

[1] Gov. Code, § 54950 et seq.

[2] Wat. Code, § 10530 et seq.

1

address common water issues.[3]  The Legislature said this was necessary because, while water agencies are "typically separate entities with clearly defined service areas within which they have exclusive authority to deliver water," "most water agencies receive their water supplies from a source that is shared with other water agencies."[4]  Thus, different agencies may develop conflicting projects and plans for the same source of water.[5]  The Water Planning Act was an effort to reduce those conflicts.[6]

As a general matter, a "regional water management group" is composed of "three or more local agencies, at least two of which have statutory authority over water supply or water management," who agree to participate by a joint powers agreement, memorandum of understanding, or other written agreement to develop and implement an integrated regional water management plan ("regional plan").[7]  A regional plan must address several specified water supply and quality issues, such as protection and improvement of water supply reliability, and groundwater contamination.[8]  A regional water management group can also include stakeholder members that are not local agencies, such as agricultural or developer organizations and members of disadvantaged communities, who "may be necessary for the development and implementation of" the

---

[3] Office of Senate Floor Analyses, Unfinished Business Analysis of Sen. Bill No. 1672 (2002 Reg. Sess.), as amended Aug. 28, 2002, p. 2 (hereafter SB 1672 analysis).  The Legislature repealed and replaced the entire Act in 2008 to conform with the changes Proposition 84 made to the integrated water management scheme.  Proposition 84 was a 2006 ballot initiative that authorized $5.388 billion in bonds to fund "safe drinking water, water quality and supply, flood control, waterway and natural resource protection, water pollution and contamination control, state and local park improvements, public access to natural resources, and water conservation efforts."  (Cal. Natural Resources Agency, Bond Accountability, https://bondaccountability.resources.ca.gov/p84.aspx (as of May 7, 2025).)  Senate Bill No. 1XX set "new directions" for the integrated water management scheme, but it did not change the Water Planning Act's underlying purpose of setting forth a regional approach for specified water management and planning issues.  (Assembly Special Committee on Water, Analysis of Sen. Bill No. 1XX (2007-2008 2nd Ex. Sess.), as amended Aug. 4, 2008, pp. 7-8.)  In fact, arguably this effort broadened that purpose by explicitly including public involvement—involvement beyond water agencies—in regional water planning.  (*Ibid.*)

[4] SB 1672 analysis at p. 2.

[5] *Ibid*.

[6] *Ibid.*

[7] Wat. Code, § 10539.

[8] Wat. Code, § 10540, subd. (c).

24-102

regional plan.[9]  Once formed, a regional water management group identifies, prioritizes, funds, and implements projects and programs designed to address the water issues identified in the regional plan.[10]

In Madera County, a "comprehensive group of stakeholders" developed and finalized the county's regional plan between 2006 and 2008.[11]  Subsequently, several regional entities, including Madera County and the City of Chowchilla, as well as several resource conservation and water districts, all executed a memorandum of understanding that created the Madera County Regional Water Management Group (Madera RWMG).[12]  To become a member, a local agency must adopt the regional plan by formal resolution

---

[9] Wat. Code, §§ 10539, 10540, subd. (b), 10541, subd. (g).  Involvement of a broad coalition of stakeholders is a goal of integrated water management.  As the California Department of Water Resources states, "Integrated Regional Water Management . . . is a collaborative effort to identify and implement water management solutions on a regional scale that increase regional self-reliance, reduce conflict, and build water and climate resilience, while concurrently achieving social, environmental, and economic objectives.  This approach delivers higher value for investments by considering all interests, providing multiple benefits, and working across jurisdictional boundaries, often on a watershed scale." (California Dept. of Water Resources, *Integrated Regional Water Management*, https://water.ca.gov/programs/integrated-regional-water-management (as of May 7, 2025).)  Further, "[c]ities, counties, water agencies, special districts, non-governmental organizations, community/environmental groups, underrepresented/disadvantage[d] communities, Tribes and others across the State have worked collaboratively to organize and establish 48 regional water management groups, covering over 87 percent of the State's area and 99 percent of its population." (*Ibid.*)

[10] Wat. Code, §§ 10537, 10539.

[11] Madera RWMG, *New Member Packet*, p. 4 (revised June 2020) (hereafter New Member Packet); Madera County Water & Natural Resources, *Regional Water Management Group*, https://www.maderacountywater.com/regional-water-management-group/ (as of May 7, 2025) (hereafter Madera RWMG website).

[12] Mem. of Understanding for Integrated Regional Water Management in the Madera Region (2009-2010), pp. 8-10 (hereafter Original MOU).  The requestor provided a copy of the MOU that the Madera County Board of Supervisors adopted by formal vote in October 2009 and executed on November 24, 2009, as well as other materials drafted in preparation to joining the Madera RWMG.  Other signatories to the Original MOU included the Root Creek Water District, the Madera Irrigation District, the Coarsegold Resource Conservation District, the Gravelly Ford Water District, the Yosemite Spring Park Utility Company, the Central Sierra Watershed Committee, the City of Chowchilla, the Chowchilla Red Top Resource Conservation District, the Chowchilla Water District, and Sugar Pine Water.

24-102

and execute the memorandum of understanding.[13]  In addition to local agencies such as Madera County and the cities of Chowchilla and Madera, the Madera RWMG also has included nonprofit and other entities such as the Madera Ag Water Association and Self Help Enterprises.[14]

The question presented is whether the Madera RWMG is subject to the Brown Act, as our opinion requestor has concluded.[15]  For the reasons that follow, we agree.[16]

## ANALYSIS

"[T]he purpose of the Brown Act is to facilitate public participation in local government decisions and to curb misuse of the democratic process by secret legislation by public bodies."[17]  "Public agencies 'exist to aid in the conduct of the people's business,' and the intent underlying the Act is that public agencies' 'actions be taken

---

[13] Original MOU, §§ 2.3, 5.1.  The paperwork submitted by the requestor includes the resolution by which Madera County adopted the regional plan.  (Madera County Resolution No. 2009-351, *In the Matter of Integrated Regional Water Management Plan* (Nov. 24, 2009).)  While dues-paying, local agency members of the Madera RWMG must adopt the regional plan by formal resolution, other entities must adopt it "by way of acknowledgement of acceptance of the [regional plan] by the individual(s) authorized to bind the entity."  (Original MOU, § 5.1.)  Every entity that eventually became a party to the Original MOU had adopted the regional plan by April 2008.

[14] Madera RWMG website, https://www.maderacountywater.com/regional-water-management-group/ (as of May 7, 2025).

[15] Madera County Counsel Regina A. Garza, Letter to Marc J. Nolan, Senior Assistant Attorney General, Opinion Unit, Department of Justice, Jan. 5, 2024.  We received one additional comment that agreed the Madera RWMG is subject to the Brown Act.

[16] We note the Madera RWMG's bylaws require all its regular and special meetings to comply with the Brown Act.  (Bylaws and Rules of Order of the Madera Regional Water Management Group (Sept. 10, 2012), § 4.3 (hereafter Bylaws).)  However, the fact the parties mutually agreed to comply with the Brown Act does not answer the question of whether the Brown Act, by its terms, would apply to a regional water management group regardless of the bylaws.  (Cf. *Service Employees International Union, Local 99 v. Options – A Child Care and Human Services Agency* (2011) 200 Cal.App.4th 869, 883 ["An agreement to comply with a statute may be enforceable as a contractual obligation, but such an agreement cannot alter legislative intent or expand the scope of the statute"].)

[17] Office of the California Attorney General, *The Brown Act: Open Meetings for Local Legislative Bodies* (2003) p. 1, https://oag.ca.gov/system/files/media/the-brown-act.pdf (as of May 7, 2025).

4

24-102

openly and that their deliberations be conducted openly.'"[18]  The Brown Act itself states, "[i]n enacting this chapter, the Legislature finds and declares that the public commissions, boards and councils and the other public agencies in this State exist to aid in the conduct of the people's business.  It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly . . . .  The people insist on remaining informed so that they may retain control over the instruments they have created."[19]  Thus, "as a remedial statute, the Brown Act should be construed liberally in favor of openness so as to accomplish its purpose and suppress the mischief at which it is directed."[20]

Entities subject to the Brown Act must follow specified requirements designed to make meetings open to the public.  Government Code section 54953(a) provides:  "All meetings of the legislative body of a local agency shall be open and public, and all persons shall be permitted to attend any meeting of the legislative body of a local agency, except as otherwise provided in this chapter."[21]  Therefore, the Brown Act applies to a "legislative body."

Section 54952 provides several definitions of a "legislative body" subject to the Act's requirements.  Relevant here, section 54952(a) defines a "legislative body" as the "governing body of a local agency or any other local body created by state or federal statute."

As a threshold matter, it is unclear how the "or" functions in section 54952(a).  On one hand, this subdivision could define the term "legislative body" as either (1) "a governing body of a local agency" or (2) "any other local body created by state or federal statute."  In that reading, "any other local body" refers to a "legislative body." Alternately, the subdivision could define "legislative body" as either (1) "a governing body of a local agency" or (2) "a governing body of . . . any other local body created by state or federal statute."  In this reading, "any other local body" would refer to an entity that is an equivalent or alternative to a local agency, with the term "governing body" attaching to both types of entities.

---

[18] 104 Ops.Cal.Atty.Gen. 34, 36 (2021).

[19] Gov. Code, § 54950.

[20] *International Longshoremen's & Warehousemen's Union v. Los Angeles Export Terminal, Inc*. (1999) 69 Cal.App.4th 287, 294 (*International Longshoremen's)*; see also *Julian Volunteer Fire Co. Assn. v. Julian-Cuyamaca Fire Protection Dist.* (2021) 62 Cal.App.5th 583, 601; *Preven v. City of Los Angeles* (2019) 32 Cal.App.5th 925, 930; Gov. Code, § 54950.

[21] All subsequent statutory references are to the Government Code unless otherwise indicated.

24-102

In our view, the first reading is correct: Section 54952(a) defines "legislative body" as either "a governing body of a local agency" or "any other local body created by state or federal statute." That is how the Attorney General's Brown Act guide has long interpreted the statute.[22] And construing the term "other local body" to refer to the "legislative body" itself is consistent with the rest of section 54952, which repeatedly uses the term "body" to refer to a "legislative body," not some other type of entity.[23]

Applying that understanding, we conclude the Madera RWMG is a "legislative body" under both parts of the section 54952(a) definition.

**The Madera RWMG is subject to the Brown Act because it is a local body created by state statute**

As noted, the second part of section 54952(a) defines a "legislative body" as "any . . . local body created by state or federal statute."[24] Although we are not aware of any judicial authority construing this provision, we conclude the Madera RWMG falls within its plain terms because the RWMG is a (1) "local" (2) "body" (3) "created by state . . . statute."

First, the Madera RWMG is "local" in nature. A "local" agency must comply with the open-meetings requirements of the Brown Act, whereas a "state" agency must comply with the Bagley-Keene Open Meeting Act.[25] Applying this distinction, the Court of Appeal has held that a housing authority is a "local" agency subject to the Brown Act, even though it is created by a state statute, because "a housing authority is local in scope and character, restricted geographically in its area of operation, and does not have statewide power or jurisdiction."[26] For similar reasons, the Madera RWMG is a "local"

---

[22] See Office of the California Attorney General, *The Brown Act: Open Meetings for Local Legislative Bodies* (2003) p. 5 ("The governing bodies of local government agencies are the most basic type of body subject to the Act's requirements. . . . In addition, the Act expressly applies to local bodies created by state or federal statute").

[23] See, e.g., Gov. Code, § 54952, subd. (b) (defining "legislative body" as a "commission, committee, board, or other *body* of a local agency" created in specified ways); *id.*, § 54952, subd. (c)(1) (defining "legislative body" as a "board, commission, committee, or other multimember *body*" that meets certain criteria). The term the section defines—a "legislative body"—is a type of "body" as well.

[24] Gov. Code, § 54952, subd. (a).

[25] See Gov. Code, § 11120 et seq.

[26] *Torres v. Board of Commissioners* (1979) 89 Cal.App.3d 545, 549-550; see also *McKee v. Los Angeles Interagency Metropolitan Police Apprehension Crime Task Force* (2005) 134 Cal.App.4th 354, 359-363 (*McKee*) (regional law enforcement taskforce

(continued…)

6

entity because it concerns local matters, its operations are restricted geographically to water issues in the Madera County region, and it does not have statewide jurisdiction.[27]

Second, the Madera RWMG is a "body."  Although section 54952 does not contain a definition of that term, context clues clarify its meaning.  The statute uses "body" in subdivisions (b) and (c) when it lists a "commission, committee, board, or *other body*."[28]  By listing "body" along with "commission, committee, [or] board," the statute indicates the term "body" also refers to a type of multi-member decision-making entity.[29]  That understanding is consistent with dictionary definitions, which define a "body" to include a "deliberative assembly" or an "aggregate of individuals or groups."[30]  And it reflects the Brown Act's purpose:  The Act applies to "multi-member *bodies* such as councils, boards, commissions and committees" because "such bodies are created for the purpose of reaching collaborative decisions through public discussion and debate."[31]  Here, the Madera RWMG is a multi-member assembly of regional entities that "reach[es] collaborative decisions" through "discussion and debate," similar to a multi-member commission, committee, or board.  It is therefore a "body" within the meaning of section 54952(a).

Third, the Madera RWMG was "created by state . . . statute."  As explained above, the Madera RWMG was defined and created pursuant to the state Water Planning Act.[32]  To be sure, the Water Planning Act did not by itself create the Madera RWMG; rather, that specific RWMG was created when Madera County and other regional entities executed the memorandum of understanding, in compliance with the Water Planning

---

created pursuant to state statute was a "local" agency subject to the Brown Act); 73 Ops.Cal.Atty.Gen. 1 (1990) (same for regional open space district).

[27] See Madera RWMG website, https://www.maderacountywater.com/regional-water-management-group/ (as of May 7, 2025).

[28] See Gov. Code, § 54952, subds. (b), (c)(1), italics added.

[29] See *California Farm Bureau Federation v. California Wildlife Conservation Bd.* (2006) 143 Cal.App.4th 173, 189 ("Noscitur a sociis (literally, 'it is known from its associates') means that a word may be defined by its accompanying words and phrases, since ordinarily the coupling of words denotes an intention that they should be understood in the same general sense," internal quotation marks omitted); *Balasubramanian v. San Diego Cmty. Coll. Dist.* (2000) 80 Cal.App.4th 977, 988 ("We must construe identical words in different parts of the same act or in different statutes relating to the same subject matter as having the same meaning").

[30] Black's Law. Dict. (12th ed. 2024) ["body"].

[31] Office of the California Attorney General, *The Brown Act: Open Meetings for Local Legislative Bodies* (2003) p. 1, italics added.

[32] See *ante* notes 11-14; Wat. Code, § 10530 et seq.

7

Act's requirements.  But we are not aware of any authority construing section 54952(a) to require that state law must, by its own force, create the particular local body at issue.  To the contrary, the Attorney General's Brown Act guide states that section 54952(a) applies where a local body is "created according to a procedure established by state law"—here, the Water Code's procedure for creating a regional water management group.[33]

That understanding is consistent with how courts have construed other parts of the statute.  Section 54952(c)(1)(A) defines a "legislative body" to include certain entities that are "created by the elected legislative body."[34]  In that context, courts have construed the phrase "created by" broadly to require only that legislative action "played a role in bringing [the entity] into existence."[35]  Applying the same construction to subdivision (a), the Madera RWMG was "created by" state statute because the Water Planning Act "played a role in bringing [the RWMG] into existence."[36]  And that conclusion is consistent with Brown Act decisions in other contexts, where courts have described local entities as "created by state law" where a state statute set forth the parameters by which local actors created the specific entity at issue.[37]

---

[33] Office of the California Attorney General, *The Brown Act: Open Meetings for Local Legislative Bodies* (2003) p. 5 (observing that a joint powers authority would be covered by section 54952(a) both because it is the governing body of a local agency and also because it is "created according to a procedure established by state law").

[34] See Gov. Code, § 54952, subd. (c)(1)(A) (defining a "legislative body" as a "board, commission, committee, or other multimember body that governs a private corporation, limited liability company, or other entity that . . . [i]s created by the elected legislative body in order to exercise authority that may lawfully be delegated by the elected governing body to a private corporation, limited liability company, or other entity").

[35] *International Longshoremen's*, *supra*, 69 Cal.App.4th at p. 295; see 107 Ops.Cal.Atty.Gen. 1, 10-15 (2024) (collecting similar authorities).

[36] *International Longshoremen's*, *supra*, 69 Cal.App.4th at p. 295.  We note that courts have broadly construed "created by" in subdivision (c)(1)(A) in part due to circumvention concerns:  that a narrower interpretation could allow legislative bodies to evade the Brown Act by creating entities through indirect means.  (See *ibid.*)  The same concerns may not be present when evaluating whether a local body was "created by" state law under section 54952(a).  Still, given our duty to construe the Brown Act liberally, we adhere to the principle that the Legislature ordinarily intends a single term to have a uniform meaning throughout a statute (see *Balasubramanian v. San Diego Cmty. Coll. Dist.*, *supra*, 80 Cal.App.4th at p. 988).

[37] See, e.g., *Torres v. Board of Commissioners*, *supra*, 89 Cal.App.3d at p. 549 (describing a housing authority as "created by state law" where it was created pursuant to procedures described in state statutes); *McKee*, *supra*, 134 Cal.App.4th at pp. 359-363 (similar for regional law enforcement agency).

For these reasons, we conclude the Madera RWMG is a "local body created by state . . . statute" within the meaning of section 54952(a). It is therefore a "legislative body" subject to the Brown Act's requirements.[38]

**The Madera RWMG is also subject to the Brown Act because it is the governing body of a local agency**

Section 54952(a) also defines a "legislative body" as "[t]he governing body of a local agency." Here, we conclude the Madera RWMG is also subject to the Brown Act because (1) the Madera RWMG itself is a "local agency" for purposes of the Brown Act, and (2) its "governing body" is made up of the voting representatives of its member agencies and organizations who discuss, deliberate, and vote upon matters of public concern.

First, for purposes of the Brown Act, the Madera RWMG is a "local agency."[39] Section 54951 defines a "local agency" as follows:

> As used in this chapter, "local agency" means a county, city, whether general law or chartered, city and county, town, school district, municipal corporation, district, political subdivision, or any board, commission or agency thereof, or *other local public agency*.[40]

As the court of appeal recognized in *SF Urban Forest Coalition*, the "phrase 'local agency' includes other entities apart from cities and counties"—indeed, the Brown Act explicitly includes "other local public agency" in its definition of "local agency."[41] As a

---

[38] Until 1994, the "different types of bodies covered by the [Brown] Act were set forth in several Government Code sections," leading to "confusion with respect to the interrelationship between" them. (Office of the California Attorney General, *The Brown Act: Open Meetings for Local Legislative Bodies* (2003) p. 4.) To clarify the Act's coverage, the Legislature amended the statute in 1994 "to consolidate, into a single section"—section 54952—"all of the provisions defining those bodies that are subject to the Act's requirements." (*Ibid.*) Since then, courts have consistently looked to section 54952 to determine whether an entity is subject to the Brown Act. (See, e.g., *International Longshoremen's*, *supra*, 69 Cal.App.4th at p. 293; *Epstein v. Hollywood Ent. Dist. II Bus. Improvement Dist.* (2001) 87 Cal.App.4th 862, 868.)

[39] As explained above, the Madera RWMG is a "local" agency subject to the Brown Act, not a "state" agency subject to the Bagley-Keene Open Meeting Act. (See *ante* note 26.)

[40] Gov. Code, § 54951, italics added.

[41] *SF Urban Forest Coalition v. City and County of San Francisco* (2019) 43 Cal.App.5th 796, 802-803; Gov. Code, § 54951.

24-102

general matter, local public agencies must "be created by statute or Constitution."[42]  A housing authority created pursuant to the Housing Authorities Law, a regional open space district, and a regional interagency law enforcement task force formed as a joint powers agency are all examples of local public agencies created by statute within the meaning of the Brown Act.[43]

For example, in *McKee v. Los Angeles Interagency Metropolitan Police Apprehension Crime Task Force*, the Court of Appeal held that a regional law enforcement task force called "L.A. Impact," which was created by multiple municipalities joining a memorandum of understanding, was a "local public agency."[44]  L.A. Impact "coordinate[d] the efforts of the police departments and other law enforcement agencies in Los Angeles County to fight drug trafficking and money laundering."[45]  The court held that L.A. Impact was a "local public agency" under section 54951 because it was created pursuant to a state statute—the Joint Exercise of Powers Act—and was authorized by its founding cities to exercise municipal police powers by making arrests and seizing assets.[46]  The court also noted that L.A. Impact was a fiscally separate entity with its own public funding sources and methods for distribution.[47]

For similar reasons, we conclude the Madera RWMG is a "local public agency" under section 54951.  As discussed, the Madera RWMG was formed pursuant to a state statute—the Water Planning Act—and it includes representatives from regional governments who agree via a memorandum of understanding to use their separate powers in service of a common public goal.[48]  As noted, the Water Planning Act creates the

---

[42] *McKee, supra*, 134 Cal.App.4th at p. 359.

[43] *Torres v. Board of Commissioners, supra*, 89 Cal.App.3d at p. 549; 73 Ops.Cal.Atty.Gen., *supra*, 1; *McKee, supra*, 134 Cal.App.4th at pp. 359-363.

[44] *McKee, supra*, 134 Cal.App.4th at p. 358.

[45] *Id.* at pp. 356-357.

[46] *Id.* at pp. 359-360.

[47] *Ibid*.

[48] The Madera RWMG's mission statement provides:

> The mission of the Regional Water Management Group (RWMG) will facilitate future coordination, collaboration, and communication for comprehensive management of water resources in the Madera Region. Through the mutual understanding among entities in the Madera Region regarding their joint efforts toward Integrated Regional Water Management we will ensure governance, development, planning, funding, and implementation to make certain that optimal and affordable water supplies

(continued…)

24-102

concept of a regional water management group and defines its functions, powers, and duties.[49] Moreover, the Madera RWMG exercises important government functions: It creates the regional plan, and it identifies, prioritizes, funds, and implements projects designed to address the plan's designated water issues.[50] Finally, the Madera RWMG is a separate entity from its member entities. It is fiscally separate, both because state statutes and the memorandum of understanding set forth the method for securing funding for its projects, and because the Water Planning Act does not require member agencies to fund regional water management group projects.[51] The Madera RWMG also has its own governance structure, as discussed in more detail later in this opinion.

We recognize the Madera RWMG includes private entities as members, unlike L.A. Impact or a regional open space district, which included only public member entities. But we are not aware of any authority suggesting the Legislature's decision to include private representatives in agency decision-making removes the agency from the Brown Act's reach. If anything, the fact the Water Planning Act provides for private parties to be involved in important regional decisions is only further reason to ensure the public's access to the process. That conclusion is consistent with other portions of the Brown Act, which subject entirely private entities to the statute's open-meetings requirements when they are authorized to exercise government authority.[52] And it is consistent with judicial decisions construing the term "local agency" in other state sunshine laws to include purely private entities that perform government functions.[53]

---

     & facilities are available now and in the future to sustain this region and its responsible growth.

(Madera RWMG website, https://www.maderacountywater.com/regional-water-management-group/ (as of May 7, 2025).)

[49] Wat. Code, §§ 10539-10543; 10530 *et seq.*

[50] Wat. Code, §§ 10534, 10539, 10540, 10541; New Member Packet, p. 4.

[51] New Member Packet, p. 8; Water Code, §§ 10544-10547, 10540, subd. (d).

[52] See Gov. Code, § 54592, subd. (c)(1)(A).

[53] The Court of Appeal has held that a purely private entity—a nonprofit—is a "local agency" under the California Public Records Act (CPRA) if it passes a four-part test: "(1) whether the entity performs a government function, (2) the extent to which the government funds the entity's activities, (3) the extent of government involvement in the entity's activities, and (4) whether the entity was created by the government." (*Community Action Agency of Butte County v. Superior Court of Butte County* (2022) 79 Cal.App.5th 221, 234-239, internal citations and quotation marks omitted). The CPRA's definition of a "local agency" is very similar to the Brown Act's. (Compare Gov. Code, § 7920.510 (CPRA), with *id.*, § 54951 (Brown Act).)

Our conclusion that the Madera RWMG is a local agency is consistent with courts' instruction that the Brown Act must be construed in favor of openness. Public agencies "exist to aid in the conduct of the people's business."[54] Public utilities, particularly projects and programs intended to maintain and improve the region's water supply and management, are undoubtedly the people's business. Further, a regional water management group is empowered to spend public money, and the Madera RWMG approves projects that use public funding.[55] The "people's business" certainly includes spending public money.

Finally, finding the Madera RWMG a local agency is consistent with the legislative intent behind the Water Planning Act because the Act requires regional water management groups to operate openly in contexts beyond the Brown Act. First, the Water Planning Act explicitly requires a regional water management group to publish a notice of intention to prepare its regional plan: It must publicize how interested parties may participate in developing the regional plan, and the regional plan must be adopted at a "public" meeting of its governing board.[56] A local agency's "public" meeting is governed by the Brown Act. Second, before any regional plan is adopted, the process for developing one must include "[a]n integrated, collaborative, multibenefit approach to selection and design of projects and programs," "[a] process to coordinate water management projects and activities of participating local agencies and local stakeholders to avoid conflicts and take advantage of efficiencies," and "a process to disseminate data and information related to the development and implementation of the plan."[57] By requiring regional coordination and data dissemination, the Legislature demonstrated its intent that a regional water management group operate with transparency. These legislative expressions favoring openness, as well as the fact the Madera RWMG is empowered to spend public funds and make decisions regarding a public utility, support our conclusion that the Madera RWMG is a local agency within the meaning of the Brown Act.

As noted above, section 54952(a) defines a "legislative body" as the "governing body of a local agency." Having established that the Madera RWMG is a "local agency," we also find that the voting representatives of its member agencies and organizations

---

[54] Gov. Code, § 54950.

[55] For instance, in 2019 and 2020 the Madera RWMG was awarded Proposition 1 funding for disadvantaged community outreach and four water projects. (Madera RWMG website, https://www.maderacountywater.com/regional-water-management-group/ (as of May 7, 2025); see also, e.g., Wat. Code, §§ 10541, subd. (a), 10546.)

[56] Wat. Code, § 10543.

[57] Wat. Code, § 10541, subd. (e), subparagraphs (5), (12) and (13).

12

("voting representatives") form a governing body within the meaning of section 54952(a).[58]

The dictionary defines "govern" as "to control, direct, or strongly influence the actions and conduct of" and "to control and direct the administration of policy in."[59] Note that a "governing body" is the first definition of a legislative body under the Brown Act, and legislative bodies subject to the Brown Act hold meetings where they discuss, deliberate, or take action on items of business within the body's subject matter jurisdiction.[60]

Here, while the Madera RWMG does not appear to be governed by a formal board of directors, the functions of a board—to control the RWMG, direct its administration of policy, and hold meetings to discuss, deliberate, and take action on issues regarding regional water management—are performed by the members' voting representatives. The voting representatives elect a chairperson who presides over meetings by, among other tasks, setting meeting agendas, convening and conducting meetings, and putting all regular motions to vote.[61] Further, at Madera RWMG meetings, decisions are made by majority vote, as specified in the body's bylaws.[62] Thus the voting representatives control the RWMG and direct its administration of policy just like a board of directors,

---

[58] The Bylaws set forth a governing scheme where (1) for formal votes, a single representative of a member entity votes on an issue, except for certain members where a single representative among them votes on an issue, or (2) to gauge preliminary support for an idea before sending it to a formal vote, all meeting participants participate in a non-binding poll. (Bylaws, §§ 5.1, 6.1, 6.2, 6.2.2, 6.3, 6.3.1.) In this opinion, we intend "voting representative" to refer broadly to any person who may vote on an issue or idea at a Madera RWMG meeting pursuant to the Bylaws.

[59] Merriam-Webster.com Dict., Merriam-Webster, ["govern"], https://www.merriam-webster.com/dictionary/govern (as of May 7, 2025).

[60] Gov. Code, § 54952.2, subd. (a); see also *Sacramento Newspaper Guild v. Sacramento County Board of Supervisors* (1968) 263 Cal.App.2d 41, 47-51.

[61] Bylaws, §§ 3.2, 3.4, 3.5.1. The chairperson must have served as a representative of a Madera RWMG member for at least a year. The Madera RWMG also elects a Chair Pro Tem who serves in absence of the chair, and it has a staff consisting of an administrative assistant who provides meeting notice and who prepares and maintains documents such as files, minutes, and findings related to items of business. (Bylaws, §§ 3.3, 3.5.1.)

[62] The Bylaws describe three categories of members. A member of the Madera RWMG has different voting rights depending on the category of its membership and the type of decision being made. (Bylaws, §§ 2.2, 2.3, 2.4, 6.1, 6.2, 6.3 [setting forth the differences between dues-paying, affiliate, and Disadvantaged Community Group members, and votes for administrative and substantive decisions].)

24-102

and as such they form a "governing body" within the meaning of the Brown Act.[63] Because this governing body governs a local agency—the Madera RWMG—the Madera RWMG is also subject to the Brown Act under the first phrase of section 54952(a).

---

[63] See 104 Ops.Cal.Atty.Gen., *supra*, 34 (a board made up of the representatives of voting members of a joint powers authority is a "legislative body").